IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| ERIC REEDER and MANDY REEDER, | § | |
| Individually and as Administrators of the | § | |
| ESTATE OF JUSTIN REEDER, Deceased, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 7:24-cv-00044-O-BP |
| | § | |
| DIANA ISACHIEVICI, *et al.*, | § | |
| | § | |
| Defendants. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Motion to Dismiss and Brief in Support filed by Defendants Jennifer Brandon, Sulema Chavez, Jeffrey Dobbins, Diana Isachievici, and Robin Wells (ECF No. 6), Plaintiffs' Response (ECF No. 8), and these defendants' Reply (ECF No. 20); the Motion to Dismiss and Brief in Support of Defendant Melissa Sanchez (ECF Nos. 24 and 27) and Plaintiffs' Response (ECF No. 25); Plaintiffs' Motion for Default Judgment against Defendant David Bolton and Brief in Support and Affidavit of Service (ECF Nos. 26, 29); and the Motion to Dismiss and Brief in Support filed by Defendant Jose Calvillo (ECF No. 31), Plaintiffs' response (ECF No. 33), and Defendant Calvillo's Reply (ECF No. 34). The case was referred to the undersigned for pretrial purposes in accordance with 28 U.S.C. § 636 on June 18, 2024. ECF No. 17.

After considering the pleadings and the applicable legal authorities, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT in part** Defendants' Motions (ECF Nos. 6, 24, and 31) and **DISMISS** Plaintiffs' claims for violation of a liberty interest and excessive force, **DENY in part** Defendants' Motions (ECF Nos. 6, 24, and 31) as to Plaintiffs' claims regarding deliberate indifference, and **DENY** Plaintiffs' Motion for Default Judgment against David Bolton

(ECF No. 26) because Plaintiffs did not request the clerk of court's entry of default before seeking default judgment. Judge O'Connor should **GRANT** Plaintiffs leave to file an amended complaint curing the deficiencies noted in this Findings, Conclusions, and Recommendation as to violation of Justin Reeder's liberty interest and excessive force on or before fourteen (14) days after he rules on this Findings, Conclusions, and Recommendation or such other time as he sets.

## I.      BACKGROUND

In their complaint, Eric and Mandy Reeder ("Plaintiffs") allege that Diana Isachievici ("Isachievici"), Jeffrey Dobbins ("Dobbins"), Sulema Chavez ("Chavez"), Melissa Sanchez ("Sanchez"), Robins Wells ("Wells"), Jose Calvillo ("Calvillo"), David Bolton ("Bolton"), and Jennifer Brandon ("Brandon") (collectively "the Defendants"), as employees of the North Texas State Hospital ("NTSH"), violated the Fourteenth Amendment rights of their son, Justin Reeder ("Justin"), a resident at NTSH at the time of his death. ECF No. 1 at 2. Plaintiffs bring this complaint "through Texas' wrongful death and survival statutes for violations of the 14th Amendment rights of Justin for excessive force and deliberate indifference to a serious medical need." *Id*.

Plaintiffs allege the following facts in their complaint, which the Court takes as true and in the light most favorable to Plaintiffs for purposes of considering Defendants' motions to dismiss. *See* ECF No. 1; *Franklin v. United States*, 49 F.4th 429, 435 (5th Cir. 2022). Justin suffered from various mental conditions including schizoaffective disorder, and he was "committed to the custody of NTSH for the purpose of mental health evaluation and treatment by order of the County Court of Hopkins County, Texas." ECF No. 1 at 4. He died while in the custody of NTSH on September 19, 2022. *Id*. A few weeks prior to his death, staff members placed him in a physical

restraint chair, and he experienced seizures while in the chair. *Id*. On this occasion, staff members administered medications that stopped his seizures. *Id*.

On September 19, 2022, Justin had "an episode" in his room, and Calvillo, Bolton, Brandon, Chavez, and Sanchez responded to him. *Id*. at 5. Calvillo, Bolton, and Brandon tackled him and "slam[med] his head into the floor causing a bloody and probably broken nose before ultimately restraining him in the restraint chair." *Id*. Chavez advised Dobbins that Justin was "placed in the restraint chair at 9:50 PM." *Id*. Justin remained there without supervision for more than twenty minutes where he repeatedly cried out for help, saying he could not breathe. *Id*. Other employees heard these cries and requested assistance from Calvillo, Bolton, Brandon, Chavez, and Sanchez. *Id*. None of these Defendants responded to Justin's room to help him. *Id*. After twenty minutes, Wells entered Justin's room and found him "unresponsive and without a pulse." *Id*. at 6. Staff members administered CPR, but Justin was declared deceased at 10:55 p.m. *Id*.

The Plaintiffs filed their complaint on March 27, 2024, in their individual capacities and as administrators of Justin's estate. ECF No. 1. In their complaint, Plaintiffs allege a Fourteenth Amendment violation for the "Denial of Liberty Interest," against Calvillo, Bolton, and Brandon. ECF No. 1 at 7. They also allege a Fourteenth Amendment violation for "Deliberate Indifference to a Serious Medical Need," against Calvillo, Bolton, Brandon, Isachievici, Dobbins, Chavez, Sanchez, and Wells. *Id*. at 8. Defendants Brandon, Chavez, Dobbins, Isachievici, and Wells filed a Motion to Dismiss on May 20, 2024 (ECF No. 6), before they were served. Plaintiffs responded to this Motion on June 10, 2024, and these defendants filed a Reply on June 24, 2024. ECF Nos. 8 and 20, respectively. Further, on July 16, 2024, Defendant Sanchez filed a Motion to Dismiss for Failure to State a Claim. ECF No. 24. Plaintiffs responded to Defendant Sanchez's Motion (ECF No. 25), and they also filed a Motion for Default Judgment against Defendant Bolton with

an Affidavit of Service. ECF Nos. 26 and 29. Finally, Defendant Calvillo filed a Motion to Dismiss on September 20, 2024. ECF No. 31. Plaintiffs responded to this Motion on October 4, 2024, and Calvillo filed a Reply. ECF Nos. 33, 34. All motions are ripe for review.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Rules require a pleading stating a claim for relief to include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 557).

Particularly in cases involving section 1983 claims against public officials, the Court must not accept conclusory allegations or unwarranted deductions of fact as true because the Fifth Circuit's heightened pleading standard requires "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Thus, the issue now before the Court is not whether Plaintiffs will prevail on their claims, but whether they can

"prove any set of facts in support of [their] claim that would entitle [them] to relief.*" Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994).

**B.    42 U.S.C. § 1983**

Section 1983 does not provide any substantive rights, but instead "provides a method for vindicating already conferred rights." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015). "Section 1983 provides a claim against anyone who under color of any statute, ordinance, regulation, custom, or usage, of any State violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) (citing *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).

**C.    Deliberate Indifference to a Serious Medical Need**

The law requires the government to provide medical care for incarcerated persons. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). Further, the Fourteenth Amendment guarantees arrestees the right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing, among others, *Estelle,* 429 U.S. at 103). Involuntarily committed individuals enjoy the same constitutionally protected liberty interests under the Due Process Clause of the Fourteenth Amendment as incarcerated persons or pretrial detainees. *Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982). These liberty interests include the right to safe conditions, the right to freedom from bodily restraint, and the right to minimally adequate care or reasonable training. *Id*. at 315-17.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). "To succeed on a deliberate indifference claim, plaintiffs must show that (1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Domino*, 239 F.3d at 755). Under this test, a prison official acts with deliberate indifference only "if he knows that inmates face a substantial risk of serious bodily harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994); *see Gobert,* 463 F.3d at 346.

The Fifth Circuit consistently has held that "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (citing *Hare v. Cty. of Corinth*, 74 F.3d 633, 645); *see also, e.g.*, *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018); *Gobert,* 463 F.3d at 346 (explaining that "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference") (citations omitted). Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not" cannot amount to deliberate indifference. *Farmer*, 511 U.S. at 838.

### D.    Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing

*Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). "[T]he immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)). Qualified immunity can be decided at the motion to dismiss stage as it is the earliest possible stage in litigation. *Carswell v. Camp*, 37 F.4th 1062, 1068 (5th Cir. 2022)

To overcome the defense of qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted). "[A] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020).

### E.   Dismissal with or without leave to amend

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Frias v. Hernandez,* No. 3:23-CV-0550-D, 2023 WL 7311193, at *4 (N.D. Tex. Nov. 6, 2023) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

### F.   Default Judgment

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. A default occurs "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The Clerk "must enter the party's default" when it is "shown by affidavit or otherwise." *Id.* The party seeking judgment must then apply for

a default judgment from the Court. *See* Fed. R. Civ. P. 55(b)(2). The applicant must show: (1) default was entered; (2) the defaulting party is neither a minor nor incompetent person; (3) the defaulting party is not in military service; and (4) if the defaulting party has appeared, that it received notice of the application. *See id*.; 50 U.S.C. § 3931.

The Court may enter a default judgment only if there is a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The pleadings are sufficient if they satisfy Federal Rule of Civil Procedure 8(a)(2). *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu Constr. Co.*, 515 F.2d at 1206. But the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id*.

Entering default judgment lies within the court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). It is "a drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, the Court should exercise its discretion with attention to the six *Lindsey* factors, including whether: (1) a good-faith mistake or excusable neglect caused the default; (2) a default judgment would be harsh; (3) substantial prejudice has occurred; (4) there are material issues of fact; (5) the grounds are clearly established for default; and (6) the Court would feel obligated, upon the defendant's motion, to set aside the default. *Lindsey*, 161 F.3d at 893.

III.     ANALYSIS

      A.     **Plaintiffs have pleaded sufficient facts to assert a viable § 1983 claim for deliberate indifference.**

Plaintiffs allege in their Complaint that Calvillo, Bolton, Brandon, Isachievici, Dobbins, Chavez, Sanchez, and Wells violated Justin's Fourteenth Amendment rights when they "ordered and restrained [him] in a mechanical restraint chair and left him unsupervised for more than 20 minutes in violation of NTSH policy." ECF No. 1 at 8. Plaintiffs allege that "Defendants knew from training that mechanical restraint chairs create the risk of serious medical harm," and that "[t]his risk in the context of [Justin] was specifically known to them based upon their prior interactions with [him] and the restraint chair which had led to a seizure." *Id*. Finally, Plaintiffs allege that "Defendants with deliberate indifference embarked on willful, malicious, reckless, and outrageous course of conduct that caused [Justin] to suffer extreme and severe mental and emotional distress, anxiety, terror and agony, as well as physical pain and injuries and ultimately his death." *Id*. at 9.

Isachievici, Dobbins, Chavez, Wells, and Brandon respond that Plaintiffs "failed to plead any facts suggesting that Defendants were subjectively aware of an immediate risk to [Justin's] health and safety, or that they consciously and wantonly disregarded such a risk." ECF No. 6 at 13. Defendants Sanchez and Calvillo make the same arguments in each of their Motions to Dismiss, stating that they were not aware of any risk to Justin and did not act with deliberate indifference towards his safety. ECF Nos. 24 and 31.

The Court must consider whether, viewing the evidence in the light most favorable to Plaintiffs, a jury could find that Defendants were aware of a sufficiently substantial risk to Justin's safety. As an initial matter, Defendants correctly assert that "NTSH policy, which is codified in Chapter 25 of the Texas Administrative Code, explicitly authorizes a physician, registered nurse,

or physician assistant to initiate the use of a mechanical restraint chair in a behavioral emergency."

ECF No. 24-1 at 14; Tex. Admin. Code § 415.260(1)(2), (b).

Plaintiffs assert that Calvillo, Brandon, Isachievici, Dobbins, Chavez, Sanchez, and Wells

knew of the substantial risk to Justin because of "their prior interactions with [him] and the restraint

chair which had led to a seizure." ECF No. 1 at 8. Specifically, Plaintiffs state the following:

> [j]ust a few weeks prior to his death on September 19, 2022, Justin had an issue with staff that resulted in him being placed in a restraint chair. During this incident, Justin began suffering from seizures when placed in the chair and was quickly treated with Ativan which resolved his symptoms. This prior incident was entered into Justin's medical chart and was known to all Defendants.

*Id*. at 4. Plaintiffs further allege that Defendants "heard Justin's cries for help and complaints that

he could not breathe and those of other individuals present, but took no action." ECF No. 8 at 13.

Isachievici, Dobbins, Wells and Chavez respond that they had no actual knowledge of any

substantial health risk to Justin because they did not personally restrain him and only ordered his

restraint. ECF No. 6-1 at 12-13. Brandon asserts that even though she was involved in the restraint,

she did not have actual knowledge of any harm to Justin. *Id*. Sanchez states that since she merely

directed staff to place Justin in restraints, "she could not have had any actual knowledge of any

substantial health risk, much less consciously disregarded it." ECF No. 24-1 at 11. Finally, Calvillo

similarly contends that while he assisted in the restraint, he "could not have had actual knowledge

of any substantial risk to [Justin]." ECF No. 31-1 at 12. Calvillo also asserts that while Plaintiffs

claim that Justin had a reaction to the restraints in the past, they "did not plead any facts from

which the Court could infer that Defendant Calvillo actually knew about Mr. Reeder's previous

negative reaction to being restrained." *Id*.

"Knowledge of a substantial risk of harm may be inferred if the risk was obvious." *Easter

v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). In *Easter*, the Fifth Circuit took the plaintiff's

allegations as true, finding that the prison official knew of the plaintiff's condition because it was

10

"well-documented in his medical chart." *Id*. Accordingly, the court inferred from the circumstances that the prison official was subjectively aware of the substantial risk. *Id*. Similarly here, Plaintiffs assert that Justin had seizures while in the restraint chair previously, this incident was entered into Justin's medical charts, and the Defendants were aware of the prior incident. ECF No. 1 at 8. Thus, accepting the well-pleaded facts as true, the Court can infer that Defendants knew of the substantial risk to Justin of being placed in the restraint chair because it was documented in his medical chart.

Additionally and alternatively, Defendants assert that they are entitled to qualified immunity. ECF Nos. 6, 24, and 31. They argue that Plaintiffs have not sufficiently pleaded a violation of a clearly established constitutional right or alleged conduct that was objectively unreasonable as a matter of law. *Id.* Because of these deficiencies, Defendants assert that Plaintiffs have not defeated right to qualified immunity. *Id.* Plaintiffs assert that Defendants are not entitled to qualified immunity because they "knowingly violated Texas law and [Justin's] Fourteenth Amendment rights." ECF No. 8 at 9.

When a Defendant raises the qualified immunity defense, a plaintiff's complaint must "state with precision and specificity" the basis for the claim which necessarily includes why the defendant official cannot successfully maintain the defense of immunity. *Anderson v. Pasadena Indep. School Dist.,* 184 F.3d 439, 443 (5th Cir. 1999). The Fifth Circuit adheres to a "heightened pleading" standard in civil rights cases against government officials. *See Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc) (affirming the continuing validity of *Elliot v. Perez,* 751 F.2d 1472 (5th Cir. 1985)).

Plaintiffs respond that, while the use of restraint chairs is not in itself a violation, "Texas law required Moving Defendants to maintain constant observation of [Justin] while he was placed

in the restraint chair." ECF No. 8 at 10; *See* Tex. Admin. Code § 415.266(a)(1) ("A staff member

… shall maintain continuous face-to-face observation of an individual in a mechanical restraint.")

Plaintiffs further cite § 415.266(b)(1) that provides that "[r]espiratory status, circulation, and skin

integrity must be monitored continuously and documented every 15 minutes (or more often if

deemed necessary by the ordering physician)." ECF No. 8 at 10. Additionally, Plaintiffs correctly

assert that regulations, rather than caselaw, can determine whether a right was clearly established

at the time of the alleged violation. *See Hope v. Pelzer*, 536 U.S. 730 (2002).

A delay in medical care violates the Constitution "if there has been deliberate indifference

[that] results in substantial harm." *Easter*, 467 F.3d at 464 (quotation marks and citation omitted).

Plaintiffs have asserted a violation of Justin's right to medical care due to Defendants' deliberate

indifference to his medical needs that resulted in his death. They also have shown that the sections

of the Texas Administrative Code just cited clearly establish the obligation that Defendants

allegedly violated. Accepting Plaintiffs' well-pleaded facts as true, Plaintiffs have pleaded facts to

show that Defendants' deliberate indifference violated Justin's right to adequate medical care, this

right was clearly established at the time through NTSH policy and the Texas Administrative Code,

and it was unreasonable for Defendants to leave Justin unattended for approximately 20 minutes

while he was restrained and complaining about having difficulty breathing.

Accordingly, Plaintiffs have sufficiently alleged a violation of Justin's constitutional rights

and pleaded that Defendants acted in a manner that was objectively unreasonable in the

circumstances. Thus, Plaintiffs have met their burden to overcome qualified immunity, and the

Court should not dismiss their § 1983 claim regarding deliberate indifference to Justin's serious

medical needs at this stage of litigation.

B.      **Plaintiffs have not pleaded sufficient facts to assert a viable § 1983 claim for the violation of Justin's liberty interest.**

Plaintiffs allege in their Complaint that Bolton, Calvillo, and Brandon violated Justin's Fourteenth Amendment rights when they "tackled him to the ground, smashed his head into the ground, and restrained him in a mechanical restraint chair…." ECF No. 1 at 7. They further allege that Bolton, Calvillo, and Brandon violated Justin's liberty interest because they "embarked on a willful, malicious, reckless, and outrageous course of conduct that was intended to cause and, in fact, caused [Justin] to suffer extreme and severe mental and emotional distress, anxiety, terror and agony, as well as physical pain and injuries and ultimately his death." *Id*. at 7-8. Plaintiffs also refer to this claim as one of "excessive force." *Id*. at 2.

When a state affirmatively acts to restrain an individual's freedom "through incarceration, institutionalization, or other similar restraint of personal liberty," the state establishes a "special relationship" with the individual. *McKay v. LaCroix*, 117 F.4th 741, 747 (5th Cir. 2024) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). "Where a special relationship exists, a state may have a constitutional duty to protect the individual from dangers, including in certain circumstances, private harm such as private violence, or self-inflicted harm." *McKay*, 117 F.4th at 747 (quoting *Hare*, 74 F.3d at 650). This relationship exists between the state and "involuntarily-committed mental patients." *McKay*, 117 F.4th at 747 (citing *Youngberg*, 457 U.S. at 317). Here, the County Court of Hopkins County, Texas, involuntarily committed Justin to the custody of NTSH. ECF No. 1 at 4. Thus, the special relationship existed between Justin and the state, for which the state had certain duties and obligations as discussed below.

The Fifth Circuit has "held as early as 1981 that '[t]he right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process.'" *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450–51 (5th Cir.1994) (en banc) (quoting

13

*Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981)). "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998). "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Id.* at 848. The officials' actions must be "grossly disproportionate to the need for action under the circumstances and ... inspired by malice rather than merely careless or unwise excess of zeal." *Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir.1998) (per curiam).

Brandon and Calvillo argue that this claim rests solely on Plaintiffs' assertion that Defendants failed to follow hospital policy and that such an assertion, even if true, is insufficient to state a claim for violation of a constitutional right. ECF No. 6-1 at 16 and 31-1 at 15. They further argue that "Plaintiff[s] ha[ve] plead no facts that would enable the Court to infer even the possibility that" Brandon and Calvillo were "motivated solely by a desire to wantonly inflict pain on [Justin] when [they] allegedly restrained him in a manner inconsistent with NTSH policy." *Id.* In response, Plaintiffs argue that the Defendants' action in not only tackling Justin, but also "slam[ing] his head into the floor causing a bloody and probably broken nose" after the tackle was "excessive in relation to" the legitimate government purpose of retraining him. ECF No. 8 at 6 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (force must be "rationally related to a legitimate nonpunitive governmental purpose" and may not be "excessive in relation to that purpose")).

While the conduct of Brandon and Calvillo was concerning, Plaintiffs have not alleged sufficient facts to show that they acted in a way that was "grossly disproportionate to the need for

action under the circumstances and ... inspired by malice rather than merely careless or unwise excess of zeal." *Petta*, 143 F.3d at 902. Plaintiffs merely assert the conclusion that Brandon and Calvillo embarked on the chain of events that led to Justin's death. ECF No. 1 at 7-8.

Regarding the restraint chair, the Supreme Court has held that an institutionalized person's rights to be free from bodily restraint are not absolute, and "there are occasions in which it is necessary … to restrain the movement of residents-for example, to protect them as well as others from violence." *Youngberg*, 457 U.S. at 319-20. Plaintiffs admit that Defendants responded to Justin's room because he had "an episode" where he "began to pace and run in and out of the bed area of the unit and become agitated." ECF No. 1 at 5. As stated previously, a restraint chair is a tool that has been recognized to assist mental facilities with the safety of their staff and patients during a behavioral emergency. Thus, simply placing Justin in the chair was not a violation of his liberty interests.

Plaintiffs cite several cases concerning the force used against Justin in restraining him. First, they cite *Kingsley*, stating that using force on an individual in custody must be "rationally related to a legitimate nonpunitive governmental purpose" and may not be "excessive in relation to that purpose." 576 U.S. at 398; ECF No. 6 at 6. Next, they cite three cases where state officers slammed individuals' heads into the ground, and the courts found such force to be excessive. *See Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008); *see also Alexander v. Cty. of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017); *see also Ordonez v. Gonzales*, No. EP-23-CV-99, 2024 WL 1250181 (W.D. Tex. Mar. 25, 2024).

However, these cases are distinguishable from the current case. In *Bush*, the plaintiff produced evidence to show that the excessive force occurred after the plaintiff was handcuffed and subdued, and that she was no longer resisting or threatening the safety of herself and others. 512

F.3d at 501. Similarly, in *Alexander* the plaintiff offered evidence to show that he did not "pose[]

any risk of harm to the officers," and he was not attempting to flee, thus the court found that the

force used against him was unreasonable. 854 F.3d at 309. Finally, in *Ordonez*, the plaintiff showed

that she was not resisting or evading arrest when officers tackled her and slammed her head into

the ground. 2024 WL 1250181 at *14. The court found this force was excessive and objectively

unreasonable because the plaintiff was not resisting. *Id.*

Here, Plaintiffs have not asserted that Justin was no longer resisting or fighting Defendants

when they tackled him to the ground. Plaintiffs merely state that Justin's head was slammed into

the ground after he was tackled. This could have happened due to the force needed to tackle him

during his episode. Accepting all of Plaintiffs' well-pleaded facts as true, and disregarding any

legal conclusions, the Court cannot conclude that Plaintiffs have sufficiently shown a plausible

claim for relief. Accordingly, the Court should dismiss Plaintiffs' § 1983 claim for violation of

Justin's liberty rights.

Additionally and alternatively, Brandon and Calvillo in their individual capacities allege

that they are entitled to qualified immunity. ECF No. 6-1 at 18 and 31-1 at 16. They argue that

Plaintiffs have not sufficiently pleaded a constitutional violation or alleged conduct that was

objectively unreasonable as a matter of law. *Id.* Thus, Defendants assert that Plaintiffs have not

met their burden to overcome their qualified immunity. *Id.*

Plaintiffs assert that since the Fifth Circuit has held that "slamming an individual's head

into the ground or an object after they are restrained is a constitutional violation," Defendants are

not entitled to qualified immunity. ECF No. 8 at 7. However, the Court already has addressed the

cases Plaintiffs offer in support of this assertion, and Plaintiffs have not sufficiently pleaded with

precision and specificity that Justin already was restrained and subdued when Brandon and

Calvillo tackled him to the ground. Accordingly, Plaintiffs have not sufficiently alleged facts to show that they acted in a manner that was objectively unreasonable in the circumstances. Thus, Plaintiffs have not met their burden to overcome qualified immunity, and the Court should dismiss their § 1983 claim regarding excessive force.

Because Plaintiffs have not stated that they cannot, or are unwilling to, cure the defects that the Court has identified in their Complaint as to claims of violation of Justin's liberty interest and excessive force, the undersigned recommends that Judge O'Connor grant them fourteen (14) days from the date he rules on this Findings, Conclusions, and Recommendation to file an amended complaint that addresses the deficiencies in their Complaint noted above. *Frias*, 2023 WL 7311193, at *4.

> **C.**      **Default judgment against Bolton is not proper because Plaintiffs have not requested the clerk of court to enter default.**

According to the documentation on the returned summons (ECF No. 14), a process server personally served Bolton with process on June 1, 2024. Thus, Plaintiffs have demonstrated that Bolton was properly served, which is a threshold issue in a default judgment proceeding. *See Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 412-14 (5th Cir. 1998). Bolton "has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *see also* Fed. R. Civ. P. 55(a). Bolton had twenty-one days to plead or otherwise respond to the complaint after service, giving him until June 22, 2024, to respond to the Plaintiffs' Complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). He failed to do so, and the Plaintiffs seek a default judgment as a result.

However, Plaintiffs have not requested the clerk of court to enter Bolton's default, which is a crucial step in the process of obtaining a default judgment. "A plaintiff may only obtain a default judgment after securing an entry of default by the clerk of court." *Walker v. Koelzer*, 715

F. Supp. 3d 956, 961 (N.D. Tex. 2024); *See* Fed. R. Civ. P. 55(a). Plaintiffs skipped that required first step and directly moved the Court to enter default judgment. ECF No. 26. Because they did not follow the necessary procedure under the rules, the Court should not enter default judgment against Bolton at this time.

## IV.    CONCLUSION

Plaintiffs have pleaded facts to show that Defendants violated Justin Reeder's constitutional rights through to their deliberate indifference to medical needs, and Defendants are not entitled to dismissal of this claim. However, Plaintiffs have not pleaded facts to show that Defendants used excessive force in violating Justin's constitutional rights. As a result, Defendants are entitled to dismissal of this claim. Lastly, Plaintiffs have not followed the proper procedure to secure a default judgment against Defendant Bolton. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT in part** Defendants' Motions (ECF Nos. 6, 24, and 31) and **DISMISS** Plaintiffs' claims for violation of a liberty interest and for excessive force, **DENY in part** Defendants' Motions (ECF Nos. 6, 24, and 31) as to Plaintiffs' claims regarding deliberate indifference, and **DENY** Plaintiffs' Motion for Default Judgment against David Bolton (ECF No. 26) because Plaintiffs did not request, nor receive the entry of default from the clerk of court. Judge O'Connor should **GRANT** Plaintiffs leave to file an amended complaint curing the deficiencies noted in this Findings, Conclusions, and Recommendation as to violation of Justin Reeder's liberty interest and excessive force on or before fourteen (14) days after he rules on this Findings, Conclusions, and Recommendation or such other time as he sets.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with

a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an

objection must identify the specific finding or recommendation to which objection is made, state

the basis for the objection, and specify the place in the magistrate judge's findings, conclusions,

and recommendation where the disputed determination is found. An objection that merely

incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific written objections will bar the aggrieved party from appealing the factual

findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d

1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1)

(extending the time to file objections to 14 days).

      **SIGNED** on November 21, 2024.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE